Good morning. Good morning, and may it please the court. My name is Mark Kressel from Harvards and Levy, on behalf of plaintiff and appellant Ms. Hoang. Ms. Hoang was denied the opportunity for a fair trial for two independent reasons, which I will talk about today. The trial court erroneously instructed the jury, adding an extra element to Hoang's case, and the trial court improperly denied Hoang the opportunity to amend the scheduling order to put forward the evidence that her prior attorney forfeited when he abandoned her due to his incapacitating physical illnesses. I'd like to start with the issue this court reviews de novo, that the trial court erroneously and prejudicially instructed the jury that Hoang had the burden to prove she was not in material breach of the agreement. Now, the Supreme Court of Washington has held that the general rule is that a defendant in a breach of contract action who claims that its breach is justified by the plaintiff's material breach must prove this claim as an affirmative defense. The burden of proof is on the defendant. Now, in IMDb's brief, it failed to even address these Washington Supreme Court cases, which we think is tantamount to a concession that this is indeed the general rule. Well, doesn't this really come down to a question of whether the obligations here by both parties, whether they're really independent? What's, I mean, give me your best argument as to why they're not concurrent, why the obligations here weren't concurrent. Because in this case, well, first of all, IMDb conceded that they were not conditions precedent. IMDb tried to say that they were concurrent, but the treatise that IMDb cited explains that concurrent conditions is a form of mutual condition precedent. So in this case, what IMDb is trying to claim is that if a user of the site submits false information, then suddenly IMDb is justified in completely abandoning its privacy policy. Well, that seems to be the law. That's what Wildner seems to say. But there's nothing. What the Supreme Court cases say is that there has to be express evidence in the contract of this intent. And there's nothing in the contract that would evidence this intent. What Supreme Court decision are you relying on to say that? This is the Ross v. Harding case and also Walter Implement. And they also say that when courts are in doubt, they will give the benefit to the interpretation that the contract did not create a condition precedent. I think in this site, the notion that the truth representation did not create a condition precedent so that they are concurrent? No, so that there's no condition precedent at all. They're not concurrent. They're just simply ongoing obligations. Now, there's a difference between simply breaching an ongoing obligation and breaching an obligation that the contract has designated as a condition precedent. Let me give the court an example. I think in this contract, Ms. Wong had a duty to pay $99.95. And if she did not do that, IMD would not be obligated to provide her with a year's worth of the IMDb Pro subscription. And similarly, if Ms. Wong did not pay her $99.95, well, then IMDb would be justified in not providing her with the service. But, of course, in this case, she did pay her $99.95. It's undisputed. So that's the kind of mutual exchange of performances that the contract would create as a condition precedent. But here the notion that just an ongoing representation that the information you're providing is true is somehow a condition precedent to IMDb having to respect your privacy is nowhere indicated in the contract. In particular, this is a lot of this is a... Well, sure, it's indicated in the contract that she was supposed to be truthful. Well, it's indicated that she was supposed to be truthful. But what's not indicated is that IMDb has no obligations unless she is truthful. And that's required in the contract. It seems to me, and I think maybe we're just reading Washington law differently, but if a contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance. It seems like here the contract required the parties both to perform. It seems like your client bore a continual obligation to tell the truth and IMDb bore a continual obligation to keep Ms. Wong's information private. So I'm trying to figure out, regardless of IMDb's actions here it seems, it seems like your client had to perform her side of the bargain before she could enforce the contract. That seems consistent with the way I read Willner's. So it seems also to be consistent with the classic understanding of contracts, burden of proof. So how under that reading is your client going to be successful here? Well, Your Honor, Willner only applies to a specific subset of contracts. Willner represents the exception to the general rule in Washington, not the general rule. It is true that, I mean, all contracts. But it was cited in the pattern contract here. I'm not sure I understand why the exception to the contract would be cited as the case that would be what the courts need to follow with respect to instructions in the pattern contract instructions for the state. Well, Your Honor, in the pattern jury instruction, even though Willner is cited, it's underneath a header that says conditions precedent. So the pattern jury instruction is making clear that Willner is just talking about a type of conditions precedent. Can I move you to another topic, which is let's suppose that we find that they're not concurrent. What's the evidence that IMDb actually breached the agreement? It seems to me that Mr. Carrillo used the subscriber name for the search, and that was something that wasn't private. And as a result of that, found what he found. So I really don't see where the breach is. Well, this was a hotly disputed factual issue, Your Honor. First of all, as far as- What was the evidence that you put forward? I know that there was argument, but what was the evidence that you put forward that he didn't do that? Well, Ms. Wong testified that she knew that she did not provide her legal name to be a subscriber name, and there was a very compelling narrative and reason for that that she also testified to in front of the jury, which is that she had spent her whole life keeping her legal name private and operating under her stage name. And she testified that when she first created her IMDb account, she created it under her stage name, and I believe that was undisputed. And then she testified that she knew she wouldn't have given her legal name for any other reason than to process the credit card payment. She also provided the subscription receipt, which shows that it was using the legal name that she provided with her credit card name. It appears above the billing address and appears above the credit card name. So that was the evidence that she put forward. All that Kyrella testified is, well, there's two separate fields. But he actually was unable to testify affirmatively that she had provided her legal name in the subscriber information field because he wasn't there either. He just testified, I went into the billing database. It has payment information. It has subscriber information. And that's where I got the name. And so what's wrong with that? That's what I don't understand. Well, there's nothing wrong with that, but there was testimony supporting Ms. Wong. So she had enough evidence from which the jury could have found that IMDb breached the agreement, and that's what she needs. And there was also the undisputed testimony that he took her legal name and provided it to a third-party website. That action of sharing her data with a third-party website is also a breach of the agreement. It was undisputed that he took the legal name and used it to search on PrivateEye.com. Now IMDb got up and argued, well, searching isn't really sharing. But, of course, the evidence was before the jury that in IMDb's own subscriber agreement, IMDb says, when you search for something on our website, you're sharing that information with us. We're tracking the information that you're searching because we want to know what you're interested in. So there was really undisputed evidence that he had breached the contract in the sense that he had shared the information with a third-party website. Well, if a search allows IMDb to find out who's searching what, IMDb finds out what IMDb is doing. How is that sharing with a third-party? No, I'm saying that's just evidence in general that the action, with third-party PrivateEye.com. I said IMDb made a legal argument that that's not sharing because using a search box isn't sharing. But I'm saying that the jury saw evidence that even for IMDb using the search box is sharing. Just by analogy, in general. When PrivateEye gives IMDb her real name, that's IMDb sharing it with PrivateEye? Well, that's the return from the search. But IMDb is sharing her name with PrivateEye.com when it enters her name into the search box. But that entering a name in the search box does not reveal to the public her real age. Well, no, but one of the conditions of the contract is that IMDb not share her personal information with others. But that comes in a portion of the contract which really deals, if you read it in context, with selling personal information to advertisers or to stores. It doesn't deal with – I think you quoted a portion of that paragraph, but not the whole of it. Your Honor, again, this was a factual issue for the jury because there is text in that provision that we quoted that makes it clear that it covers way more than just selling to advertisers. It includes giving the information up in response to government investigations. It includes sharing it for purposes of fraud protection. It includes giving it to e-mail vendors so that they can work with the information. So it was really up to the jury to decide whether what Tyrella did, which is taking her legal name and – is a factual determination for the jury. No, Your Honor. Well, under Washington law, they make a distinction. The interpretation of the contract's legal effects is a matter of law for the court. But the interpretation of the specific factual meaning of individual words in the contract, if they are disputed by the parties, is a factual issue for the jury. Could you cite me a Washington case on that? Your Honor, I'd be happy to follow up with a letter because I have a case in mind. I just don't remember the name offhand. All right. I'd like to move on to the second issue, which was that Ms. Wong was denied an opportunity for a fair trial because the trial court refused to amend the scheduling order after Wong's attorney abandoned her and forfeited her case due to his debilitating illness. Now, the trial court's refusal to do so was illogical, implausible, and without support from inferences that may be drawn from the facts in the record. The undisputed evidence here was that prior counsel, John Dozier, in the months during which he was supposed to be helping Wong develop her case, was suffering from brain surgery, heart surgery, a surgical kidney removal. He was being treated for daily dialysis and numerous infections. In the face of these illness, there's simply no other way to view this record than that he was unable to represent Ms. Wong. And rather than face defending the depositions of the very witnesses that Wong told him would be relevant, he simply forfeited them and stipulated not to have IMDB take their depositions. And perhaps most objectively wrong, he refused to disclose any experts, even though among her claims was a claim for lost future earnings in what we all know is a very risky career. There's simply no plausible way to read him failing to disclose a damages expert as anything other than abandonment of a client. Let me ask you about the damages for a second. Am I right in reading the record that the most money that your client made in a year from acting was around $5,000? Well, it's true, Your Honor, that like a lot of up-and-coming actresses, she wasn't making a lot of money at the time, but she was entitled, and indeed she really needed to put on an expert to try to create an economic model of the chances that her career would take off in the future. There are a lot of actors who, until very late in their careers, really make a pittance, and then suddenly things take off. And doesn't it fall into the strategic decision of a counsel in a case that he may have evaluated as a low-dollar case to just put on evidence that could get him a verdict but not spend so much money that it was going to turn into a losing proposition no matter what the jury came back? Well, the record in this case, though, was really to the opposite, was that trial counsel actually harbored very high estimations of the amount of damages that she had lost. Probably an economic expert would have provided a more realistic view, to be honest, but he didn't even identify one, so she was never able to try to make her best case to the jury. Unless the Court has further questions, I'd like to save my last minute for rebuttal. Good morning, and may it please the Court. My name is Eric Miller, and I represent imdb.com. The jury heard Ms. Huang's account of what happened here, and it returned a defense verdict, and that verdict is entitled to respect. Turning first to the claim of instructional error, the Court's questions have already alluded to a lot of the key points here about Washington law, and I would just emphasize that the Washington pattern instructions are given persuasive effect by Washington courts. They are consistent with the language of what the Washington Supreme Court has used in cases like Willner, and the plaintiff has not shown that they were an incorrect statement of Washington law. But, Mr. Miller, why wouldn't telling the truth be a different and independent obligation to protecting privacy? Those two things seem very different than a mortgage situation where you're transferring title to property, where transferring the title and paying the money are definitely concurrent. They are concurrent in the sense that telling the truth is really the core obligation of the customer. There's the initial payment of money, but after that, the customer has no obligation to provide any information at all. But if they do, there are two separate provisions of the contract that say that that information has to be truthful, and that's critical to IMDb's business because there are a lot of places that you can go if you want to find information about actors in Hollywood. There's lots of gossip sites out there. IMDb is different. It's a compendium of factual information about the entertainment industry, and if the customers don't trust its information because it has falsehoods and inaccuracies on it, then there's no reason for it to exist. So the critical nature of telling the truth in submissions that are going to be put on IMDb is such that it's appropriate to view that as a concurrent obligation of the customer, that if the customer isn't doing that, then there's really no deal between them and IMDb. And so it really does fit into the pattern that the Washington courts have recognized. And was this discussed, was this disputed below that they were concurrent conditions or not? I don't know that it was argued in precisely those terms. A plaintiff did object to the instruction, but I don't know that there was a discussion. What was the ground of the objection on the instruction? A plaintiff argued that her material breach of the contract was an affirmative defense that the defendant had to show. And even if you concluded that that was correct under Washington law, contrary to what the Washington Supreme Court Instruction Committee thinks, it's not a basis for reversal here because under the harmless error analysis, the court has to look at all the instructions, all the evidence, and conduct a common sense inquiry into would the result probably have been different under different instructions. And to believe that the result would probably have been different, you have to believe three things. You'd have to believe that plaintiff had established that IMDb breached its contract. You'd have to believe that she had shown causation of some damage. And you'd have to believe that the jury was in equipoise on the question of whether there was a material breach by IMDb because otherwise the allocation of the burden wouldn't have mattered. And none of those three things is true, and certainly all three of them together are not true. And if I could start with the question of whether IMDb breached, the court's questions have already brought up a number of problems with the theory of breach here. I think perhaps the clearest path to seeing that there was no breach is that the contract, which incorporates the privacy policy, says that IMDb can use customer information in responding to customer requests. And here we have an explicit request from Ms. Wong, go back to your files. And Ms. Wong interprets that request with the benefit of hindsight. Now that we know that she was lying about her age and was dissatisfied only because the lie wasn't big enough, knowing that, you can say, well, of course that wasn't really a request for them to find out the truth. But they didn't know that. Mr. Cairola, when he responded to that request, had no way of knowing that she was trying to engage in a bigger falsehood. And being told, you know, go back to your files, my birth date is incorrect, the natural way to interpret that is go back and find out what the real birth date is. That's the way that you would show that the listed birth date is incorrect, is to find out what the real birth date is and see that it's something else. So that was a perfectly reasonable thing for him to do, and it falls right within that provision of the privacy policy. The second basis for concluding that the jury would reach the same result is the total failure to show any causation of any damages. Ms. Wong's own agent testified that he was not aware of her true date of birth until this lawsuit was filed, even though it had been up on IMDb for three years, which makes it very hard to believe that it was really having a significant effect on her career. She couldn't identify any specific jobs or even opportunities for jobs that she had lost. All of her evidence on causation was essentially the claim, you know, I used to make a certain amount of money and now I'm making less. And, you know, there are a couple of problems with that. One is just the post hoc fallacy that there's no other evidence of, you know, what else was happening in the industry or in her career or, you know, in the economy at that time. But on its own terms, it was quite questionable because as we showed in cross-examining the plaintiff, her claimed earnings from acting in the years prior to this event were not consistent with what she reported to the IRS. And so, you know, that coupled with all of the other reasons. Did she overstate her income to the IRS? No, she did not. And, you know, coupled with all of the other reasons to doubt her credibility, you know, the forged documents, the forged United States passport, the jury was entitled to disbelieve that. And finally, the question of, you know, materiality of the breach. I've already sort of explained why this is not just a technical requirement of the contract. It's a core obligation of the customer. And so a violation of that is indeed material and would have been found so under any allocation of the burden. Turning very briefly to the discovery question. Before we go to discovery, let me just ask you a couple of questions with respect to the harmlessness and some of what you just discussed. I have a little pause with respect to going the harmlessness route because I think we have case laws. The Sanders case says that when an instruction erroneously adds an element to the plaintiff's burden of proof, it's unlikely that the error would be harmless. And just trying to figure out how Sanders would not play a role here because they used a general verdict form. You all used a general verdict form. Both sides agreed to use a general verdict form. That's correct. And I think it is fair to say that in the run of cases, it may be unlikely. But what Sanders and Mockler and a couple of the other cases that we've cited all say is that you look at the jury's verdict, you look at all of the evidence, and at the end of the day, it's sort of a common sense inquiry into would the result probably have been different. And you can make a judgment based on the evidence of whether it would. And, again, even if you think that any of these three elements individually might have been there, they all three would have had to be there for the jury to reach the same result. In your brief, you make a lot of references and arguments about IMD's promise not to improperly use Ms. Wong's information. But what about IMD's promise not to post information without her consent? It seems like that happened here. There is not a – I mean, the date of birth was not information that she had provided. And there is not a promise not to post information. But it was information pertaining to her. Well, the IMDB, like the New York Times, publishes a lot of information pertaining to individuals that those individuals might prefer not to have published about them. And then they have a First Amendment right to do that. Is it your position that the privacy requirement refers only to information that is provided by the client? It doesn't say that, does it? It says – I mean, this is at page 1180 of the excerpts of record. I mean, it is focused on, you know, the information that you provide. And there's a section there, you know, information you give us. And, you know, Ms. Wong, there's also a section about information from other sources. But when you read that in context, it is not publicly available information about a person like a date of birth. Your position is that information provided by other sources is not information when in the possession of IMDB, which must first be shown to the client before it's given to third parties? That's correct. And the explanation for that is that there is – all of the information on IMDB is, you know, information about people that comes to IMDB from – most of it comes from third parties. People, you know, watch a movie and add, you know, here's the movie, here are the people who were in that movie. And that's – you could read that as information about those actors that comes from a third party. But if you – In other words, the editing of what you show is not totally within the control of the client? That's right. And so, I mean, really the more natural way to read information from other sources is, you know, something that the credit card company tells them as part of processing the transaction. You know, that would be part of, you know, the individual's private information. It's not, you know, the sort of public information about – that's put on the website. The claim of, you know, that the district court erred in not reopening Discovery is reviewed only for abuse of discretion. The district court found that Ms. Wong had not shown good cause to reopen Discovery. That's reviewed very deferentially. What the court found was that she had not been diligent in conducting Discovery. She had, you know, six months to do it. She did a fair amount of Discovery there. But, you know, after the fact, decided that she wished she had done more. You know, her claim for being relieved of that is to say, well, it wasn't me. It was my lawyer who didn't do what I wish he would have done. That sort of runs into the general rule that a client is responsible for the acts or omissions of his or her lawyer. There is – the exception to that is very, very narrow. It comes for this court's Taney case, and it applies really only in cases of default judgment or its equivalent, you know, failure to prosecute, failure to file a timely notice of appeal, and only in cases of gross negligence, essentially amounting to abandonment by counsel. The Supreme Court explained that in the Maples case, which is a capital habeas case that the plaintiff relies on, that when the counsel has abandoned his client, then you can say, well, he's not really her agent anymore, and so she's not chargeable with his conduct. We don't have anything close to that here. Mr. Dozier was actively litigating the case. He propounded 15 interrogatories, 10 requests for productions of documents, took four – or his associates took four depositions. He had two associates who were with him. He had a local counsel who was the same local counsel that's now continuing to represent her on appeal. So it's simply not the case that she was abandoned by counsel, and there's really, you know, short of a rule that, you know, everyone gets a do-over when they're dissatisfied with their counsel's performance. You know, there's nothing in this court's cases that would suggest the district court abused its discretion. If the court has no further questions, we ask that the judgment be affirmed. Thank you very much. Thank you. Mr. Kressel, is it your position that any information that IMDb was about to put out on your client, regardless of source that it receded from, could be the New York Times, had to first be presented to your client before it could be put on the site? No, Your Honor. That's not our position, but I think Your Honor's question really exemplifies why this contract was so confusing, because I think by the literal text of the contract, that's exactly what it means. But, of course, IMDb's whole website would have to come down if that were the case, because most of what IMDb is doing is gathering information, public information from third parties, and publishing it without your consent. That's why it was so important for the jury to have a chance to rule on this case, because it's also obvious, just as obvious, that there's some subset of information which is private information and which IMDb was agreeing to protect. Now, maybe a very obvious example of that is your credit card information. Maybe another example of it is the kinds of movies that you've been searching about. Maybe you've been only searching for movies about parents who discover their child is gay or people who discover their spouse is cheating on them. This is private information that you don't want shared. Now, what the jury had to do is listen to both sides and look at this rather broad contract and figure out was the information at issue here within the scope of what that provision was meant to protect. And Ms. Wong testified that it was. She gave her legal name with her credit card information. It was information that she had guarded zealously her life upon pain of risking her career prospects, and she treated it that way. So that's why this was a close case for the jury, and I believe, as Judge Bergia mentioned, this court presumes prejudice, and the burden would be on IMDb to show that the jury had to come out the same way had it been properly instructed. But if you look at the big picture here, what IMDb did was quite surprising. They go into their billing files. They take the customer's name associated with the credit card, and they run a public records search, all of this in response to her begging and pleading with them to take her age off the website. Now, sure, IMDb has good arguments for how you can fit that into the provisions of the contract if you look at it just right, but I think a lot of jurors would be really upset about this kind of behavior, and it's really up to the jurors to decide if this agreement, it really does permit that type of activity. It's a contract of adhesion. It's required of everybody who signs up for the site. Can it really be that IMDb is reserving for itself the right to, quote, respond to your requests by doing the exact opposite of what you're trying to do and taking your private information and using it to run public records searches and sharing it with other databases? I have a question for you. Do you dispute that under the contract your client was required at all times to submit truthful information? We do not dispute that she was required to submit truthful information. We do dispute the legal impact of that and that a breach of that provision did not justify what IMDb did here. The other example that I wanted to provide for your honor is on this case the issue of stage names. This is a website that catalogs people in Hollywood. A lot of these actors use stage names. Well, if IMDb's theory of the contract were correct, that would mean that every actor who's registered under their same stage name who's now obviously provided false information to IMDb, according to IMDb they're free to take that actor's credit card information, their search information, all the data that they've gathered about them and do whatever it pleases because they submitted a stage name instead of a real name. So again, there's nothing in the contract that would indicate to users that that's the right that IMDb is reserving for itself. So it certainly was something that the jury was going to have to decide here if the white lies that she told in this case during the period that the contract was in effect were such that they would justify IMDb and running off and doing whatever it pleased to get the information about her that it wanted. Thank you very much. That concludes the argument on Huang v. IMDb. The case is marked submitted. And this concludes our session for today and for the week. Court is adjourned.
judges: Bea, Murguia, Orrick